Okay. United States of America versus approximately $281,111.00. Mr. Hecht. Your Honors. May it please the Court, I am David Hecht, representing the appellant Min Yang, one of the appellants. It is undisputed that the appellant is an innocent victim here, a victim that did nothing but wish to illegally emigrate to the United States. He attempted to emigrate here after finding a high-end immigration consulting firm in China that was made up of both Americans and Chinese, but that company turned out to be a fraud. Appellant was scammed, defrauded by this cadre of criminals connected to the sham immigration consulting company, some of whom pled guilty, one of whom was convicted, the others have been indicted, but remain fugitives. The government doesn't dispute any of these facts. It was confirmed by the criminals and employees from Department of Homeland Security that there was no evidence that any claimant was involved in any criminal misconduct. This case is about a bank account, or at least in this appellant's instance, containing nearly $300,000 that Mr. Yang was instructed as part of what he believed was a totally legal process to deposit into an account. If the criminals had not been caught, they would have taken the money as payment, as admitted by one of the criminals, Mr. Wayne. The bank account and the monies therein were never touched by the criminals in furtherance of their scams. The money is Mr. Yang's, and unfortunately, the government was able to take those funds as part of an overreaching forfeiture action. Several errors in the underlying district court action and trial are why we are here today. The harm is significant because Appellant Yang has really suffered twice. First, his dream of emigrating to the United States has been improperly seized because of an overly intrusive government. The government proved a violation of the money laundering statute, didn't it? The conspirators laundered the money with the intent to promote the carrying on of visa fraud. When you look at this particular then the laundering was not completed because this money remained in the appellant's control. This was really one part of a scheme that was not completed. I would argue that no, and under the money laundering statute, we're getting to this argument. One of the three appeal is that the statute itself says, and we're talking about 19 U.S.C., 1956, A2A, there is an intent prong that whoever transports, transmits, or transfers or attempts to transport transmits. The laundering was done with the intent to promote a specified unlawful activity, which is visa fraud. It depends on who you're talking about. For the criminals, they may have had that intent, but the intention of this money from this appellant had nothing to do with any kind of a crime. Once you've proved that, all the government that has to show is a substantial connection between the property and the offense. They also have to show the intent. That was the improper jury instruction. I don't know where that comes from. You say that, but I don't see where that comes from in the law. It's right in the statute. It's also echoed. It's in statute 1956, A2A. That's the money laundering violation, which is the conspirator's intent. We don't know that that's the conspirator's intent because it doesn't say that. That's how the money laundering statute is violated here, as I understand the theory of this case. That might be the government's theory of the case, but when you read the statute- They're the ones who charged the crime. Sure, but here in the instance of this bank account, there was no intent by the party who controls the account to commit any kind of a crime. I think that's the- For forfeiture, all the government has to prove is that the property is subject to forfeiture. That is, the property was used to commit or facilitate the commission of a criminal offense or was involved in the commission of a criminal offense. They just have to show a substantial connection between the property and the offense. There's not an intent requirement there. The forfeiture statute directly references 1956, as well as 57 and 60, and this court in another language, to your honor's point, they had- The problem, Mr. Heck, is I don't see where the text requires the government to prove both the intent of the criminal who committed money laundering and the intent of the property owner. Those are two different things. I, my argument is is that the one statute references the other and in order to satisfy the money laundering- Yeah, but the statute it references is dealing with a criminal offense committed by someone else, not necessarily the property. Well, I think we need to take a macro view because here, when you when you look at the 30,000 foot view, then this would basically any victim who had, any innocent victim who has done nothing but had money that was taken by a criminal. That's the issue, right? And that's why I think we have to read the statute this way. And I understand- Mr. Heck, may I ask you a question? I guess, is this your main argument or are you also relying on the inability to enter the country? That is another one of our arguments. So I want to ask you about that. Your claim did not apply for an entry visa. That is correct. It would have actually been kind of useless to do so in light of the State Department's known policy not to allow anyone connected to the particular criminals into the United States. And so it would have been a futile attempt to do so. Is there any evidence that you put on, that you presented, that would show it would have been futile? Aside from the, well, the blanket policy of the State Department, which we point to in our briefs, yes. No, no, no. I'm not talking about a legal argument. I'm saying, did you present evidence? Did you make a record to show that it would have been futile? There is no record that this particular appellant factually did anything or brought up that fact. Aside from in conversations with the court, I think it was a pre-motion conference, there were issues relating to whether or not this appellant could enter the United States. And prior counsel had chimed in and said that that was a particular issue and that he was trying to push for mediation in light of the burden that the appellant would have in the trial court. But he was represented by counsel. He was represented by counsel, indeed, except there was an instruction because of the lack of his ability to attend. Not only was there an adverse inference, there was an instruction that would have caused the jury to conclude that there was a reason that these people were not being, the appellant and others, were not allowed into the United States. Hey, Mr. Heck, you've saved two minutes for rebuttal, Mr. Shields. Hey, please, Mr. Court, just to kind of follow up on some of the points that were made by Mr. Heck, I represent four of the claimants. And referencing back the pre-trial conference, and it's noted in all the briefs, the government acknowledged that none of the movements were going to be allowed to enter the country. Now, and that's in January of 2019, a good eight months before the trial, and clearly blocked these claimants from entering the country. Then in August of 2019, they report to the court that they've come up, that the government has come up with a plan that perhaps will allow them to be entered on a temporary visa, which was then followed up with, you know, the State Department won't allow that. Then they came and said Homeland Security will be allowed to parole them in, but they acknowledged that it's, that they don't really have sufficient time to do it. Prior counsel provided the information to Homeland Security within a matter of days. They came back and acknowledged to the court that they simply couldn't process it and allow these people to enter the country. And you can see, one of the money, the money was used for this nefarious purpose, but you have to acknowledge the fact that when the trial was conducted, every person who may, that came to trial and testified, the jury found that they were innocent owners, and that they then were allowed, they were, their money was returned to them. All of those who did not attend had their, their forfeited. Yeah, but you know, that doesn't mean you were denied due process. Well, I think they had noticed, they had an opportunity to be heard, they were represented by counsel, they could have put on evidence, they could have testified via live video feed, they could have, it appears they could have submitted even affidavits, the District Court would have submitted that. I mean, you had an opportunity to put on more than you did. Right, but if you, if you look at the Helminsky case, I think in particular, that kind of addresses the right to, to be present at trial and to participate and to present your case, you know, and Helminsky had a right to be present at trial for the, for the civil proceeding, for a foreign national who the, the country, the nation has a sovereign right to exclude. Well, I think for, for purposes of due process, you do. I acknowledge that, you know, the government has the right to say certain people cannot enter the country. I don't think there's any disagreement about that. However, having said that, we now have the provision that allows innocent owner defense. So in terms of due process, you have, I mean, you have lawyer, you can put on evidence. Yeah, but the lawyer can't talk, lawyer can't, can't testify. And that's kind of one of the, the comments that was made. Couldn't the client have testified versus video conferencing? I don't know if they had the capability or the ability to do that. I can tell you. I don't know that I know the answer to that. I know that there were attempts to do that. Well, I mean, if the, if the, if the, if the objection here is a due process objection, weren't you obliged to make a record about it? The prior council addressed that in the January meeting that they weren't going to be available, but the issue of, of other means to get the or not. Okay. Now back to the, the issue about, I think it is clear that the constitution applies to them with regard to due process. That one of the things that the government maintains is, is that they're non-resident and because their money was used in this scheme, that that deprives them of the substantial connection. And I point the court to, you know, there's a whole series of cases about the fact, the fact that non-resident aliens have funds in us banks gives them the substantial connection. Mr. Shields, you've only saved a minute for rebuttal. If you keep talking, you're going to knock. I'll, I'll, I'll stop judge. Thank you, Mr. Bogner. Thank you, your honor. May in the record first, because what was explained particularly by Mr. Hecht is not what is actually in the record. And with regard to the $300,000 that was put in the United States, this was not money as was explained at trial that was intended to go to the criminal defendants. All of the claimants paid their money, $300,000 to the defendants to be part of this program, to have these documents made up for them, which as we showed in the criminal trial, and as we showed in the civil trial were fraudulent. So, and what argument are you trying to address? Just noting that the $300,000 that was placed into the U.S. bank account was a facade. This was money that was made to the, to make the joint venture appear more real. And that was the basis of this. Is this It's in response to Mr. Hecht had talked about the $300,000. Mr. Hecht said that you were required to prove the property owner's intent. As I understand the law, that's not true, is it? Correct. That is not true, your honor. We agree with that. This is civil forfeiture, right? It's an NREM proceeding, right? Absolutely. It's a proceeding against property. Correct. Right. And, and, and it's, it's an ancient remedy that, that has never required proof of the property owner's criminal intent, has it? No, we needed to prove that, that a crime occurred and substantially connected. And we did that. Your honor, turning to the exclusion of individuals from the United States. Again, we can't mix up the parties here. There are five appellants, Min Yang, Hung Tu-Cheng, and Wei Hong did not apply and were not excluded from the United States by the State Department. Xi Dai and Linlin Gao were denied entry visas in January. It was brought to the United States attention in August, seven weeks before trial, which is detailed in the record. And as the United States noted before the district court, and this is in document 246, both Xi Dai and Linlin Gao had been denied entry into the U.S. prior to this, unrelated to anything involving the criminal case. There was no blanket policy by the State Department to keep people out. And for all the reasons that the court already explained, they did receive due process. They had the ability to avail themselves of the federal court system. They filed a lawsuit. They had as to the substantial connection. So there was argument put on, there was vociferous cross-examination. They received due process here, your honor. There is nothing wrong with what occurred here constitutionally. The district court's instruction was correct as a matter of law. And the one other issue that wasn't touched on, but the denial of the directed and cedes the remainder of its time. Judge Schlesinger, you have any questions? No. Judge Lagoa, no. Okay. Mr. Heck, you've got two minutes. Thank you, your honor. So I guess the government admitted there is a blanket policy that was in the record. And I just want to be clear on that. And I did want to also address the sort of empty chair syndrome, as well as videoconferencing. The appellant actually wanted to watch this proceeding today, but being located in China was unable to. I know that's not in the record, but we all know that China and other states outside of the United States routinely block traffic to the United States. And also some countries have policies that you actually cannot stand for deposition or other kinds of testimony. So I wanted to put that into the record, or I wanted to put that into for your consideration. And I think that as far as what the $300,000 was going to be used for, that was something that it is undisputed that the appellant had no knowledge of. And whether or not he had $300,000 and could deposit it in a US bank account was not criminal. He did not do anything to advance. So I think the fundamental problem with this case is that this is fundamentally unfair to have an innocent appellant or an innocent victim of a crime who then gets money seized simply because this court is interpreting. So the innocent owner defense is something that the property owner bears the burden of proving. There's no requirement of proof of the intent on the part of the government in making its case. Well, I think that as far as the directed verdict, that would have been the proper remedy also here because of the complete lack of any evidence that anything was amiss. And that would have, there was an innocent owner defense put up and was really shown by the testimony about what was being done here, that the $300,000, there was testimony about that. There was, and that all supports the J-Mall that should be overturned. Okay. Thank you, Mr. Hack. Mr. Shields, you saved a minute. Just in following up, one of the things that the government said is that they were obviously able to participate and provide a defense and stuff. And what Mr. Heck said is probably as clear as possible, the empty chair situation. When a jury is hearing the case, if they're not able to hear from the witness or the party, they are severely handicapped. And it was clear from the result of the trial that those who were able to testify prevailed and those who were excluded lost. And I don't know that it can be any more clearer than that. Did everyone who prevailed? All but one. So one of them prevailed who did that. Is that right? I'm sorry. One who attended did not prevail. I see. All right. Any other questions? If there are no other questions, I'll rest. Thank you, Mr. Shields. We are adjourned for the week. Thank you very much. Thank you, Your Honors. Thank you, Your Honor. Thank you, Your Honor.